**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1410

GILBERT LLP,

Appellant,

v.

TIRE ENGINEERING AND DISTRIBUTION, LLC, d/b/a Alpha Tyre Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Corporation; JORDAN FISHMAN, an individual; BEARCAT TIRE ARL, LLC, d/b/a Alpha Tire Systems, d/b/a Alpha Mining Systems, a Florida Limited Liability Company; BCATCO A.R.L., INCORPORATED, a Jersey Channels Islands Corporation,

Plaintiffs – Appellees,

and

SHANDONG LINGLONG RUBBER COMPANY, LTD., a foreign company; SHANDONG LINGLONG TIRE COMPANY, LTD., f/k/a Zhaoyuan Leo Rubber Products Company, Ltd., a foreign company; AL DOBOWI, LTD., a foreign limited liability company; AL DOBOWI TYRE COMPANY, LLC, a foreign limited liability company; AL DOBOWI GROUP, a foreign corporation; TYREX INTERNATIONAL, LTD., a foreign limited liability company based in Dubai; TYREX INTERNATIONAL RUBBER COMPANY, LTD., a foreign corporation; QINGDAO TYREX TRADING COMPANY, LTD., a foreign corporation; SURENDER S. KANDHARI, an individual,

Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:09-cv-01217-TSE-IDD)

Argued:  January 26, 2017                    Decided:  May 15, 2017

---

Before GREGORY, Chief Judge, and DUNCAN and FLOYD, Circuit Judges.

---

Reversed and remanded with instructions by unpublished opinion.  Chief Judge Gregory wrote the opinion, in which Judge Duncan and Judge Floyd joined.

---

**ARGUED:** Richard Daniel Shore, GILBERT LLP, Washington, D.C., for Appellant. William Edgar Copley, WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellees.  **ON BRIEF:** August J. Matteis, Jr., WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

This appeal concerning a fee dispute between a law firm, Gilbert LLP ("Gilbert"), and its former client, Alpha,[1] is before us for a second time. Alpha retained Gilbert in 2009 on a contingency basis, and Gilbert secured a $26 million judgment for Alpha in the underlying suit. After obtaining the judgment, Alpha terminated Gilbert's representation and retained two former Gilbert attorneys to finish defending the judgment on appeal and initiate recovery actions.

Gilbert asserted an attorney's lien against any future recovery on the judgment. The district court, applying Virginia law, employed a quantum meruit analysis to assign Gilbert's fee lien a value of $1,237,720. Gilbert appealed that decision to this Court. We remanded with instructions to the district court to apply the factors the Virginia Supreme Court set forth in *County of Campbell v. Howard*, 112 S.E. 876 (Va. 1922), to determine the value of Gilbert's fee lien in quantum meruit. After supplemental briefing and argument, the district court issued a second opinion, again valuing Gilbert's fee lien at $1,237,720. For the reasons that follow, we reverse the judgment of the district court and direct entry of an attorney's fee award of $3,118,595.

---

[1] "Alpha" collectively refers to Jordan Fishman; Tire Engineering and Distribution, LLC; Bearcat Tire A.R.L., LLC; and Bcatco A.R.L., Inc. Jordan Fishman owns the three entities, and they do business under the names "Alpha Tire Systems" and "Alpha Mining Systems."

3

I.

We set forth the background of the underlying suit in our opinion regarding the jury verdict. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012). We addressed facts pertaining to the fee dispute in our previous opinion on this issue. *See In re Outsidewall Tire Litig.*, 636 F. App'x 166 (4th Cir. 2016) ("*Outsidewall I*"). The facts relevant to this appeal are highlighted below.

Pursuant to an August 4, 2009 engagement letter ("Engagement Letter"), Alpha retained Gilbert to pursue intellectual property claims against several defendants. The Engagement Letter provided for Alpha to pay Gilbert a 40% contingency fee plus reimbursement for costs and expenses if Alpha prevailed. If Alpha terminated the representation, Gilbert would be entitled to a fee based upon hours expended, or in the alternative, Gilbert could seek its contingency fee if Alpha recovered within twelve months of termination. In either event, Alpha would reimburse Gilbert for expenses and disbursements.

In July 2010, Alpha, with Gilbert as counsel, obtained a $26 million jury verdict. In October 2011, after the judgment but prior to the completion of appeals and recovery, two Gilbert attorneys who represented Alpha left Gilbert and formed Weisbrod Matteis & Copley PLLC ("WMC"). Alpha terminated Gilbert and hired WMC to finish defending the judgment on appeal and initiate recovery actions. WMC commenced proceedings to collect on the judgment, recovering $546,000 through lawsuits before negotiating a $15.5 million settlement with the defendants in November 2013.

4

In January 2012, Gilbert filed an attorney's fee lien pursuant to Virginia Code § 54.1-3932 against any future recovery. Alpha moved to determine the value of Gilbert's lien. Gilbert sought to recover approximately $4.5 million in fees and $1.8 million in costs. The district court determined that under Virginia law, the fee provision in the Engagement Letter no longer governed, and quantum meruit was the appropriate fee analysis. *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d. 282, 286 (Va. 1977). On September 29, 2014, the district court awarded Gilbert $1,237,720.00 in fees and $720,621.67 in costs. The court arrived at the fee award using a lodestar calculation: multiplying a reasonable number of attorney hours by a reasonable hourly rate. The district court acknowledged the *County of Campbell* factors in a footnote, deciding that they did not warrant an upward or downward adjustment of its lodestar.

Gilbert appealed the district court's decision. In a January 11, 2016 opinion, this Court vacated and remanded to the district court with instructions concerning the proper quantum meruit analysis for attorney's fees. *Outsidewall I*, 636 F. App'x at 170-71. Under Virginia law, courts must contemplate nine factors set forth in *County of Campbell* when determining a fee award in quantum meruit, and we instructed the district court to consider the *County of Campbell* factors on remand. *Id.* We emphasized two factors in particular, regarding the contingent nature of the agreement and the result secured. *Id.* We also instructed the district court to recalculate its quantum meruit cost award pursuant to the Engagement Letter. *Id.* at 171-72.

After supplemental briefing and argument, the district court issued a new opinion that discussed the *County of Campbell* factors. The district court again awarded Gilbert

$1,237,720 in attorney's fees. The court increased the cost award to $1,732,568.67.[2] Gilbert timely appealed the district court's fee determination, arguing that the court erred by failing to properly apply the *County of Campbell* factors pursuant to our instructions in *Outsidewall I*.

## II.

We review an attorney's fee award for abuse of discretion. *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 640 (4th Cir. 1998). The trial judge has discretion in awarding attorney's fees because the trial judge has "close and intimate knowledge of the efforts expended and the value of services rendered." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). We will reverse a fee award for abuse of discretion when the district court is "clearly wrong." *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994).

As set forth in *Outsidewall I*, the parties agree that Virginia law governs the fee dispute. 636 F. App'x at 169. Under Virginia law, when "an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon quantum meruit for services rendered prior to discharge." *Heinzman*, 234 S.E.2d. at 286. The Supreme Court of Virginia established nine factors a court must consider when awarding attorney's fees in quantum meruit under these circumstances:

---

[2] The revised cost award is not at issue in this appeal.

> the amount and character of the services rendered, the responsibility imposed; the labor, time, and trouble involved; the character and importance of the matter in which the services are rendered; the amount of the money or the value of the property to be affected; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so. The result secured by the services of the attorney may likewise be considered; but merely as bearing upon the consideration of the efficiency with which they were rendered, and, in that way, upon their value on a quantum meruit, not from the standpoint of their value to the client.

*County of Campbell*, 112 S.E. at 885. Courts applying Virginia law carefully contemplate these factors when assessing quantum meruit fee awards. *See, e.g.*, *Hughes v. Cole*, 465 S.E.2d 820, 834 (Va. 1996).

A.

On remand, the district court acknowledged each of the *County of Campbell* factors. The court first considered four factors in relation to Gilbert's rates: the responsibility imposed by the case; the professional experience and skill required; the character and standing of Gilbert attorneys; and the contingent nature of representation. In light of the responsibility imposed and the professional skill and experience required, the district court began its analysis with the lodestar rates it used in its first opinion: $400/hour for partners, $350/hour for counsel, and $275/hour for associates, resulting in an average hourly rate of $341.67. This rate was based on rates in fee-shifting cases and reflected a reduction in Gilbert's typical rates, which ranged from $900/hour to $375/hour. Though the district court indicated it would adjust these rates as the relevant factors warranted, it declined to do so based on the character and standing of Gilbert

7

attorneys. Most critically, the district court did not increase the rates to account for the contingency fee factor. Thus, after discussing these four *County of Campbell* factors, the district court arrived at the same rates it previously had.

The court then addressed the remaining five factors as pertaining to Gilbert's hours worked: the amount and character of services; the labor, time, and trouble the case entailed; the character and importance of the matter; the amount of money or value of the property affected; and, more importantly, the result secured. As the court discussed each factor, it reduced Gilbert's requested hours by a certain percentage, ultimately decreasing the 10,955 hours Gilbert originally requested by 65%. This resulted in 3,834.25 hours, the same number of hours the district court awarded in its initial decision.

On remand, the district court arrived at the exact same lodestar as it did when it failed to adequately consider the *County of Campbell* factors in its initial opinion. In so doing, we are unable to discern that the district court afforded proper consideration to the two most significant factors in this case, which we specifically highlighted in *Outsidewall I*: the contingent nature of representation and the result secured. The district court abused its discretion in failing to do so.

B.

The district court does not appear to have given sufficient weight to the eighth *County of Campbell* factor--whether the fee is absolute or contingent--as we specifically instructed. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010) (finding that the district court erred by neglecting to give the contingency fee "the weight it was due" in the analogous federal law fee award analysis). The Supreme Court of Virginia

8

observed that it is "a recognized rule" that attorneys employed on a contingency basis "may properly charge a much larger fee." *County of Campbell*, 112 S.E. at 885. A Virginia Circuit Court noted, when applying the contingent fee factor, that "every hour spent in performance of a contingent fee contract is an hour spent against the risk of no compensation at all." *Lowe v. Mid-Atlantic Coca-Cola Bottling Co.*, 33 Va. Cir. 361, 363 (Va. Cir. Ct. 1994). Contingency agreements "transfer a significant portion of the risk of loss to the attorneys." *In re Abrams & Abrams*, 605 F.3d at 246.

While *Outsidewall I* instructed the district court to consider the *County of Campbell* factors, we pointed to the contingency fee factor in particular, stating that the circumstances of this case "suggest that the contingent nature of the fee arrangement should have been a significant factor" in the district court's analysis. 636 F. App'x at 170. The district court arrived at the same fee award on remand, which represented a significant discount on Gilbert's customary rates. Although it could have reached the same result on the basis of a reasoned analysis, we fail to discern such analysis here.

The district court's analysis of the contingency factor on remand was limited to addressing Gilbert's argument that the court should multiply the lodestar figure by two or three to account for the contingent nature of representation. The court provided two reasons for declining to apply a multiplier to its lodestar. First, the district court distinguished *Kidd v. CSX Transp.*, No. 89-0899, 1990 WL 518125 (W.D. Va. 1990), the only case Gilbert cited in support of fee enhancement that the court found analogous to the facts of this case. The district court observed that in *Kidd*, the court awarded an hourly fee and split a contingency fee between the discharged and successor firms. *Kidd*,

9

1990 WL 518125, at \*3. The *Kidd* court divided the contingency fee because to award only an hourly fee would be a windfall to the plaintiff, who expected to pay a contingency fee on any recovery. *Id.* Conversely, in this case, the district court believed that a windfall was not a concern because the parties expected at the outset of representation that Gilbert would be paid an hourly rate upon termination. Second, the district court declined to apply a multiplier because although Alpha selected Gilbert, unlike plaintiffs in fee-shifting cases, the Engagement Letter did not disclose Gilbert's "excessive" hourly rates. J.A. 746.

The proper objective for the district court was to determine a reasonable fee in quantum meruit using the *County of Campbell* factors. This Court already concluded that under Virginia law, the fee contract does not govern in these circumstances, and a discharged attorney is entitled to a quantum meruit fee. *Outsidewall I*, 636 F. App'x at 169-70 (citing *Heinzman*, 234 S.E.2d at 286). That the contract indicated the parties knew Gilbert could recover only a fixed hourly fee if the representation was terminated does not justify lowering Gilbert's hourly fees in an award calculation. Nor does it preclude Gilbert from receiving a higher fee to account for the contingent nature of representation.

That the Engagement Letter did not disclose Gilbert's hourly rates similarly does not preclude an award higher than the district court's lodestar. Because Gilbert was discharged without cause from a contingent fee agreement with Alpha, a quantum meruit analysis is appropriate, regardless of the Engagement Letter's terms. *Outsidewall I*, 636 F. App'x at 169-70 (citing *Heinzman*, 234 S.E.2d at 286). The district court focused on

10

the Engagement Letter when it should have concentrated its efforts on determining the reasonable value of Gilbert's services given the contingent nature of the representation. *County of Campbell*, 112 S.E. at 885.

The lodestar fee the district court awarded is inappropriate under the circumstances of this case and inadequately explained. *See In re Abrams & Abrams*, 605 F.3d at 245 (holding that "fixing a lodestar fee in this contingency case was error"). The district court relied on fee-shifting rates to calculate its lodestar, then failed to adjust those rates to account for the contingency agreement.[3] *See, e.g.*, *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 666 n.10 (11th Cir. 2013) (citing *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368 (Fla. 1995)) (quantum meruit attorney's fees are not measured by the same standards as fees awarded to opposing parties under a fee-shifting analysis).

Gilbert represented Alpha throughout the underlying case without any guarantee that the firm would recover for hours expended, *Lowe*, 33 Va. Cir. at 363, before two Gilbert attorneys who handled the case left the firm and became Alpha's successor counsel. Though *County of Campbell* indicated it is a "recognized rule" that attorneys may receive *higher* fees in contingency arrangements, 112 S.E. at 885, the district court actually *reduced* Gilbert's fees. This reduction does not comport with the risk the firm assumed in this contingency case, and we indicated in *Outsidewall I* that such a reduction

---

[3] We reminded the district court in *Outsidewall I* that this is not a fee-shifting case, and when a litigant selects a firm with higher rates, the firm may be entitled to a larger quantum meruit fee. 636 F. App'x at 171 n.4.

11

would not be appropriate. 636 F. App'x at 170; *see also In re Abrams & Abrams*, 605 F.3d at 246 (finding that the district court erred by reducing the attorney's fee to a level that few attorneys would accept at the outset of a contingency representation due to the risk involved).

In addition to being contrary to *County of Campbell*, the district court's decision is inconsistent with the spirit of *Outsidewall I* with regard to the contingency fee factor. *See United States v. King*, 68 F.3d 462, 466 (4th Cir. 1995) (unpublished table decision) (on remand, a district court should not act inconsistently with "either the express terms or the spirit of the mandate"). While we declined to "issue instructions for the district court's exercise of its broad discretion" in applying the *County of Campbell* factors, we drew attention to the contingency fee factor. *Outsidewall I*, 636 F. App'x at 170-71, n.4. We intimated that the contingent nature of the agreement would affect the fee award when the *County of Campbell* factors are properly considered. *Id.* at 170 ("[T]he particular circumstances of this case . . . suggest that the contingent nature of the fee arrangement should have been a significant factor in a *quantum meruit* analysis.")

The circumstances of this case include Gilbert working only for the possibility of a fee if Alpha prevailed, at the risk of recovering nothing for its work. After Gilbert poured thousands of hours into this matter, obtaining a jury verdict and $26 million judgment for Alpha, two Gilbert attorneys departed the firm to start WMC, and Alpha terminated Gilbert's representation to secure WMC as successor counsel. In light of these facts, the district court abused its discretion by failing to make even a one-cent adjustment to its initial lodestar figure, which used substantially lower rates than Gilbert typically charges,

12

to account for the contingent nature of representation.  While a firm's rates might warrant reduction in quantum meruit under different circumstances, we cannot ignore the amount of work that Gilbert did without any guarantee of recovery, and the district court's sharp reduction of Gilbert's rates simply did not reflect that risk.

For these reasons, we find that the district court erred in its application of the eighth *County of Campbell* factor by failing to properly account for the contingent nature of Gilbert's representation of Alpha.

C.

The district court also failed to properly consider the ninth *County of Campbell* factor:  the result secured.  *County of Campbell* held that the result secured may bear "upon the consideration of the efficiency with which [the attorney's services] were rendered," but should not be considered "from the standpoint of [the services'] value to the client."  112 S.E. at 885.  In other words, a court should determine whether the attorney's services were efficient in relation to the result obtained.  Moreover, as with the contingency fee factor, we referenced the result secured in particular in *Outsidewall I*. We observed that the district court "failed to consider the 'result secured' in this case:  a $26 million judgment."  636 F. App'x at 170-71.

While the district court acknowledged the $26 million judgment, it did not attribute sufficient weight to the efficiency of Gilbert's services in securing that judgment. The district court opined that the result secured would be "more relevant to a fee determination" if Gilbert sought a fee award after actually recovering on the judgment.  J.A. 755.  But WMC would not have been able to engage in the "arduous,

13

time-consuming effort required to recover on the judgment," J.A. 755, if Gilbert had not secured a judgment for Alpha in the first place. *See Lowe*, 33 Va. Cir. at 363 (although petitioning counsel did not secure the ultimate settlement, it could not be denied that he contributed to it). Gilbert's services resulted in a $26 million judgment for its client before two of its attorneys left the firm and became Alpha's successor counsel, and a judgment in this amount is undoubtedly a substantial result. *See Bradley v. Sch. Bd. of Richmond*, 53 F.R.D. 28, 43 (E.D. Va. 1971) (considering in a quantum meruit fee determination the substantial result that the plaintiffs' attorneys secured through their efforts), *rev'd on other grounds*, 472 F.2d 318 (4th Cir. 1972).

The district court reduced Gilbert's requested hours from 10,955 to 3,834.25, finding Gilbert's request excessive in relation to the $26 million judgment. First, the court decreased Gilbert's hours by 55% because it found the attorneys' time entries flawed due to vague task descriptions and lumping tasks together in a single entry. The district court further reduced the number of hours by 2% to account for travel time that Gilbert improperly billed, and 3% for unnecessary hearing and deposition attendance. The court imposed a 4% reduction for time spent on unsuccessful causes of action or motions, and an additional 2% for post-trial work.[4]

In theory, the district court's analytical method comports with *County of Campbell*'s instructions to consider the result secured as bearing on the efficiency with which services were rendered, rather than from the standpoint of their value to the client.

---

[4] The district court stated that these percentages total 65%, J.A. 757, though they actually amount to 66%.

14

112 S.E. at 885; *see also Morris Law Office, P.C. v. Tatum*, 388 F. Supp. 2d 689, 715 (W.D. Va. 2005) (observing that Virginia law focuses on the "objective value of the services rendered by the terminated attorney, not the value of the benefit conferred"). If the district court had reduced Gilbert's requested hours by a more modest number, this might have been a case of reasonable minds differing, without amounting to an abuse of discretion. *See Dwyer v. Metro. Life Ins. Co.*, 4 F. App'x 133, 141 (4th Cir. 2001).

But reducing Gilbert's requested 10,955 hours to 3,834.25 constitutes error in light of Gilbert's work to obtain a $26 million judgment. This involved the efforts of at least six attorneys over more than two years, and their work on this complex matter included initiating the underlying action, discovery involving multiple parties, discovery-related motions, summary judgment motions, and a six-day trial on five counts. Gilbert also participated in post-trial work, such as responding to the defendants' motions for judgment and for a new trial, moving for attorney's fees against the defendants, and preparing briefs to this Court in the underlying appeal. Given the effort that Gilbert expended to achieve a $26 million judgment for Alpha, the district court too aggressively cut Gilbert's hours. The "objective value" of Gilbert's services in securing a substantial result is greater than the district court's award reflects. *Morris Law Office*, 388 F. Supp. 2d at 715.

On remand, Gilbert reduced its requested hours to include only reasonable time entries from the fee petition in the underlying case[5] and time entries that Alpha did not challenge in Gilbert's prior submissions. Thus, Gilbert decreased its request from 10,955.8 hours to 6,763.6.[6] The district court dismissed this modified number. First, the court noted that 6,763.6 hours "still far exceeds the 3,834.25 hours previously awarded" by the district court. J.A. 747. Second, the court viewed Gilbert's proffer as an effort to reopen the factual record, which it found inappropriate. Third, the court observed that Gilbert's amended request was "1,865.4 hours greater than the amount of hours claimed for work through trial," hours that implicitly represented post-trial work. J.A. 756 n.19. The court disapproved of Gilbert's claimed post-trial hours because WMC handled collection efforts. Finally, the court believed it was "impossible to determine" which hours Gilbert originally claimed but no longer sought on remand, and rejected Gilbert's amended request for 6,763.6 hours. J.A. 748-49.

The district court did not adequately consider Gilbert's "good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933). As discussed below, we find 6,763.6 hours

---

[5] The fee petition sought fees and costs from the defendants for Gilbert's work on claims subject to the Lanham Act.

[6] Gilbert's supplemental briefing references 6,745.5 hours on one page and 6,763.6 hours on the next. J.A. 522-23. A declaration by a Gilbert attorney, Craig J. Litherland ("Litherland Declaration"), which Gilbert submitted in support of its brief, contains a calculation of 6,763.6 hours, so we rely on that number. J.A. 545.

16

reasonable for Gilbert's work from August 2009 through October 2011 in light of the $26 million result.

For these reasons, the district court also erred in its consideration of the result secured.

III.

Because this case is before us for a second time regarding the attorney's fees issue, with all due respect to the district court, we decline to remand again. "A request for attorney's fees should not result in 'a second major litigation,'" with all of the expenses associated with such litigation. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 181 (4th Cir. 1994) (quoting *Hensley*, 461 U.S. at 437). In *Doe v. Kidd*, this Court determined an appropriate fee award to avoid further expense and the risk of another appeal, which would have accompanied remand. 656 F. App'x 643, 658 (4th Cir. 2016), *cert denied*, 137 S. Ct. 638 (2017) (mem.). We will therefore proceed to calculate Gilbert's attorney's fee award using the doctrine of quantum meruit to determine what Gilbert's services are "reasonably worth" in light of the *County of Campbell* factors. 112 S.E. at 885-86.

The contingency fee factor is critical to the *County of Campbell* analysis in this case, and proper application of the factor warrants awarding Gilbert its customary rates. Per the Litherland Declaration, Gilbert's typical rates as applied to this case reflect an

average hourly rate of $461.09.[7]  J.A. 545.  Given that the firm's rates ranged from a maximum of $900/hour for partners to a maximum of $425/hour for associates on this matter, a true average without accounting for hours expended is over $600/hour. Gilbert's proffered average hourly rate of $461 falls on the lower end of its rate scale, which indicates that associates and junior partners, with rates well below $900, did the bulk of the work on this case.  Given this workload allocation, and in light of the contingent nature of the fee agreement, Gilbert's customary rates should not be decreased.  An average hourly rate of $461.09 accounts for the risk associated with contingent representation in a way that the district court's average of $341.67 did not.

Whereas other circumstances might call for cutting a firm's rates in quantum meruit, the facts in this case justify awarding Gilbert's customary rates without reduction. Gilbert assumed a great deal of risk by taking a complex intellectual property matter on a contingency basis, with no guarantee of recovery.  *See County of Campbell*, 112 S.E. at 885; *Lowe*, 33 Va. Cir. at 363.  Gilbert represented Alpha from initial complaint to post-trial defense of a $26 million judgment, before two Gilbert attorneys left the firm and Alpha retained them as successor counsel.  Had the district court "recognize[d] the significance of the contingency fee" and accorded the factor the weight it deserved due to the risk Gilbert undertook, it would not have lowered Gilbert's rates in its analysis.  *In re Abrams & Abrams*, 605 F.3d at 245.

---

[7] The precise hourly average is $461.085073.  While we use the precise average in our fee calculation, we round to $461.09 for purposes of this opinion.

In fact, *County of Campbell* indicates that the contingency factor might justify an even larger award. 112 S.E. at 885. But applying a multiplier as Gilbert requested would be akin to awarding a contingency fee, and *Heinzman* held that a quantum meruit fee, not the contingency fee from the original contract, is the appropriate award in these circumstances. 234 S.E.2d. at 285-86. While $3.1 million is reasonable in light of the *County of Campbell* factors, doubling that amount results in an award that is about 40% of the over $15 million that WMC recovered. And 40% of the recovery is the contingency fee specified in the Engagement Letter. We therefore decline to apply a multiplier to the award. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988-89 (4th Cir. 1992) (finding the district court erred by enhancing a lodestar that used the attorney's customary rate, because doing so resulted in an award of the attorney's usual contingent fee). Granting Gilbert an award using its customary rates, without reduction, sufficiently accounts for the contingent nature of the representation.

We further find Gilbert's amended request for 6,763.6 hours to be reasonable. This number reflects a reduction of 4,192 hours from Gilbert's original request, which accounts for some of the troubling time entries that the district court identified, while compensating Gilbert for its efforts in securing a $26 million result for Alpha under a contingency agreement. The $26 million judgment cannot be ignored in calculating the fee award; it was a substantial result. *See Bradley*, 53 F.R.D. at 43. Without Gilbert's work to obtain and defend this judgment, WMC would not have been able to recover any money through enforcement actions, because there would have been no judgment to begin with. *See Lowe*, 33 Va. Cir. at 363 (stating that whether an attorney provides

19

services earlier or later in the case is irrelevant when evaluating the efficiency of the attorney's services in reaching the ultimate result).

Gilbert undertook this complex matter from initial complaint to post-trial, devoting at least six attorneys over the course of two years, and 6,763.6 hours for those efforts is reasonable in light of the $26 million judgment. Moreover, Gilbert assumed the work without any guarantee of payment, because the firm took the case on a contingency basis. *Lowe*, 33 Va. Cir. at 363.

We find that Gilbert's services are reasonably worth $3,118,595, reflecting 6,763.6 hours at an average hourly rate of $461.09, and direct entry of an attorney's fee award in that amount.

IV.

For the foregoing reasons, we reverse the district court's judgment and remand with directions to the district court to award $3,118,595 in attorney's fees to Gilbert.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*