## Richmond

### DOYLE J. HEINZMAN v. FINE, FINE, LEGUM & FINE, ATTORNEYS AT LAW.

April 22, 1977.

Record No. 760492.

Present, All the Justices.

*Robert E. Brown; J. Gray Lawrence, Jr. (Howell, Anninos, Daugherty & Brown,* on brief), for plaintiff in error.

*Howard I. Legum (Fine, Fine, Legum & Fine,* on brief), for defendants in error.

POFF, J., delivered the opinion of the court.

We consider whether, when an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a settlement, the discharged attorney is entitled to the contractual fee or to a fee based upon *quantum meruit* for services rendered prior to

discharge. The fee in issue was awarded to Fine, Fine, Legum & Fine, Attorneys at Law (hereinafter, Legum), in orders approving settlement of a claim for damages for personal injuries growing out of an automobile accident. These orders were entered in a suit filed by attorney Augustus Anninos for Doyle J. Heinzman against James N. Mouser.

The facts were stipulated. On January 14, 1975, two days after the accident, Heinzman signed a "power of attorney" engaging Legum to represent him and promising to pay a fee of "1/3 of the gross amount recovered" by way of "compromise", "trial", or "appeal". After advising Mouser's insurer that he represented Heinzman, Legum wrote letters to the Norfolk Police Department, DePaul Hospital, and Dr. James H. Phillips requesting reports. On January 29, 1975, Legum settled the property damage claim, deducted a fee of one-third of the gross amount recovered, and remitted the balance to Heinzman. At that time, the question of Heinzman's residual disability had not been determined, and "the [personal injury] case was not in a posture" to be settled. Thereafter, Legum talked by telephone with Dr. Phillips, held conferences with Heinzman, and forwarded a medical report to Mouser's insurer. Other than that, he did "no work at all on the case" and conducted "no investigation or research".

Heinzman approached Legum on March 5, 1975 and asked him to lend him money for living expenses. Explaining that such a loan would violate professional ethics, Legum refused. Heinzman thereupon discharged Legum, demanded his file, and employed Anninos on a contingent fee basis. The next day, Anninos wrote to Legum asking for an itemized account of the work he had done and the amount of the fee he expected. Legum replied that "it is our position that we are entitled to one-third gross of any recovery and that it is not necessary to give you an approximate [sic] of any time that I have spent on the matter."

Anninos filed suit for Heinzman against Mouser, "worked the case from 'A to Z' ", and on the day before trial was scheduled, settled the personal injury claim for $10,000.00. Before entry of an order approving the settlement, Legum filed a motion asking the trial court to award him a fee of one-third of the settlement fund. Following a hearing and argument on the motion, the trial court addressed a letter opinion to counsel holding that "Mr. Legum is entitled to recover his one-third contractual fee out of

the settlement funds." By orders entered December 19, 1975 and January 15, 1976, the trial court approved the settlement and awarded Legum an attorney's fee of $3,333.33.

The precise issue we address is a matter of first impression in this Court. Among cases decided elsewhere, the facts and statutes were so disparate that we cannot confidently identify a majority rule or define a developing trend. We must, in any event, determine the rule in Virginia as applied to the facts and circumstances in the case before us.

In support of the trial court's award of the contractual fee, Legum relies, in part, upon Code § 54-69 (Repl. Vol. 1974) which provides:

"An attorney shall be entitled, as a fee, to the amount which the clerk is authorized to tax in the bill of costs, in any suit, or for any service as such attorney. But any contract made with an attorney for higher compensation shall be valid and he may recover such sum as he contracts for with the party for whom the service is rendered; and, if there be no such contract, he may recover from such party what his services are reasonably worth."

Legum cites *Yates and Ayres* v. *Robertson & Berkeley*, 80 Va. 475 (1885), where this Court construed an 1840 amendment [1] to section 15, chapter 76, Code of 1819, a statutory ancestor of Code § 54-69. Noting that the statute had formerly limited lawyers to fees taxed as costs, we concluded that the amendment had removed the limitation.

"The policy of the law as to the lawyers, appears to be *entirely* changed, and they are left free to conduct their business transactions with their fellowmen upon the same basis as other citizens; they and those dealing with them to be mutually bound by their contracts, express or implied." *Id.*, 80 Va. at 479.

That language must be interpreted in context with the circumstances reflected in an instruction granted in *Yates* and

---

[1] As codified, that amendment provided in part that "any contract made with an attorney . . . shall be valid, and may be enforced in like manner with any other contract." Section 11, chapter 164, Code of 1849.

approved on appeal. The instruction told the jury that if they believed that the clients

> "employed the [attorneys] to represent them . . . and it was understood between the parties that [the attorneys] should receive compensation for such services, though the amount of compensation was not fixed; and that [the attorneys] . . . performed the service . . . then [the attorneys] are entitled to recover what such services were reasonably worth. . . ." *Id.*, 80 Va. at 478.

Code § 54-69 deals with both express contracts and implied contracts. With respect to implied contracts and in accord with *Yates* where the contract was implied and the attorneys' services had been fully performed, the statute authorizes an attorney to recover "what his services are reasonably worth." With respect to express contracts, the statute provides that an attorney "may recover such sum as he contracts for" but clearly contemplates that he may do so only when "the service is rendered". Contrary to Legum's position, neither *Yates* nor the statute authorizes an attorney to recover the contractual fee where, as here, the services engaged in the contract have not been fully performed.

■ Legum also relies upon Code § 54-70 (Repl. Vol. 1974) which provides:

> "Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney at law to prosecute the same, and such attorney shall have a lien upon such cause of action as security for his fees for any services rendered in relation to the cause of action or claim. And when any such contract shall be made, and written notice of the claim of such lien shall be given to the opposite party, his attorney or agent, any settlement or adjustment of such cause of action shall be void against the lien so created, except as proof of liability on such cause of action. Nothing in this section shall affect the existing law in respect to champertous contracts."

Legum interprets this statute to mean that, once an attorney and his client have negotiated a contract, the attorney becomes entitled to claim a lien coextensive with the contractual fee. But the statute is not so broad. Rather, it measures the lien by the "fees for any services rendered in relation to the cause of action

or claim", *i.e.*, compensation for the quantity and quality of the work performed.

Aside from the statutes, Legum argues that a contract for legal services is the same as any other contract and is governed by the same rules concerning breach and the measure of damages.

■ We agree that, absent overreaching on the part of an attorney,[2] contracts for legal services are valid and when those services have been performed as contemplated in the contract, the attorney is entitled to the fee fixed in the contract and to the lien granted by the statute. The question remains whether, as Legum contends, an attorney employed under a contingent fee contract and discharged without just cause[3] is entitled to recover from the proceeds of a later settlement the full amount of the contractual fee.

Courts which make no distinction between contracts for legal services and other contracts answer this question in the affirmative. The decisions rest upon various rationales: courts cannot convert bilateral contracts into unilateral contracts and relieve one of the parties of the burden of his bargain, *Friedman v. Mindlin*, 91 Misc. 473, 155 N.Y.S. 295 (1915); a client "who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong", *Dolph v. Speckart*, 94 Or. 550, 564, 186 P. 32, 35 (1920); when the client wrongfully frustrates performance, the attorney is entitled to the presumption that he would have fully performed, *McElhinney v. Kline*, 6 Mo. App. 94 (1878).

We reject such rationales, for we believe the premise upon which they rest is wrong. Contracts for legal services are not the same as other contracts.

> "[I]t is a misconception to attempt to force an agreement between an attorney and his client into the conventional modes of commercial contracts. While such a contract may

---

[2] Virginia Code of Professional Responsibility provides that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Rule 6:II:DR 2-106(A).

[3] "[A] lawyer shall not advance or guarantee financial assistance to his client"; Rule 6:II:DR 5-103(B). Legum quite properly refused Heinzman's request for a loan, and so far as the stipulated facts disclose, his discharge was entirely without just cause.

have similar attributes, the agreement is, essentially, in a classification peculiar to itself. Such an agreement is permeated with the paramount relationship of attorney and client which necessarily affects the rights and duties of each." *Krippner* v. *Matz*, 205 Minn. 497, 506, 287 N.W. 19, 24 (1939).

Seldom does a client stand on an equal footing with an attorney in the bargaining process. Necessarily, the layman must rely upon the knowledge, experience, skill, and good faith of the professional. Only the attorney can make an informed judgment as to the merit of the client's legal rights and obligations, the prospects of success or failure, and the value of the time and talent which he must invest in the undertaking. Once fairly negotiated, the contract creates a relationship unique in the law. The attorney-client relationship is founded upon trust and confidence, and when the foundation fails, the relationship may be, indeed should be, terminated.

Termination of the contract of employment is addressed by Virginia Code of Professional Responsibility, Rule 6:II:DR 2-110. A lawyer is permitted to withdraw upon specified conditions. He is required to withdraw when "discharged by his client." No condition is imposed upon the client's right to discharge his lawyer.

Legum does not dispute the fact that a client has an absolute right to discharge his attorney. He contends, however, that when the discharge is without just cause, the act constitutes a breach of contract and that the measure of damages is the fee fixed in the contract. We agree with the courts that hold otherwise.

"That the client may at any time for any reason or without any reason discharge his attorney is a firmly-established rule. ... [T]he attorney may recover the reasonable value of the services which he has rendered but he cannot recover for damages for the breach of contract. The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause." *Martin* v. *Camp*, 219 N.Y. 170, 174, 114 N.E. 46, 48 (1916).

Overruling its prior decisions, the court in *Fracasse* v. *Brent*, 6 Cal.3d 784, 789-90, 494 P.2d 9, 12-13, 100 Cal. Rptr. 385, 388-89

(1972), applied the same rule and explained the reasons for the rule:

> "The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. . . . Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence."

We share the conclusion that *quantum meruit* is the most functional and equitable measure of recovery. The law does not favor recoveries premised upon conjecture. In awarding the contractual fee, the trial court presupposed that Legum, had he not been discharged, would have achieved a recovery exactly equivalent to that achieved by Anninos. But this is entirely speculative. Legum might have effected a greater settlement or won a larger verdict; considering the vagaries of trial, he might have recovered nothing.

Having in mind the special nature of a contract for legal services, we hold that when, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon *quantum meruit* [4] for services rendered prior to discharge and, as security for such fee, to the lien granted by Code § 54-70.

---

[4] As applied in this context, a *quantum meruit* determination looks to "the reasonable value of the services rendered, not in benefit to the client, but, in themselves". *County of Campbell* v. *Howard*, 133 Va. 19, 51, 112 S.E. 876, 885 (1922). *See also* Rule 6:II:DR 2-106(B), which formalizes the reasonable fee standards enunciated in *County of Campbell.*

Insofar as the judgment awards Legum a contractual fee the judgment will be reversed and the case will be remanded with instructions to award Legum a fee based upon *quantum meruit* for services rendered prior to discharge.

*Reversed and remanded.*