## CIRCUIT COURT OF THE CITY OF RICHMOND

Brenda L. Page

v.

Bertha Baskerville

January 17, 1991

Case No. LS-2287-2

By JUDGE RANDALL G. JOHNSON

This case arises out of a dispute between an attorney, the plaintiff, and her former client, the defendant, over fees. Although plaintiff's motion for judgment sought monetary damages, and although the case was set to be tried to a jury, counsel for the parties agreed prior to trial that the action was really one for a declaratory judgment and that neither party wanted a jury. Accordingly, the court granted the parties' joint motion to amend the pleadings to reflect that the action is one for a declaratory judgment, and the case was tried to the court.

There is hardly any factual dispute. On December 5, 1989, defendant was injured in an automobile accident while a passenger in a car driven by Annette Mickens. On December 10, defendant hired plaintiff to represent her in her claim for personal injuries, signing the usual one-third contingent fee agreement.

Through her investigation, plaintiff learned that Ms. Mickens, who was at fault in the accident, was driving a leased vehicle and had no insurance except what might be available through the lease. Defendant, however, did have insurance, and on April 10, 1990, plaintiff informed defendant that defendant's carrier, pursuant to its uninsured motorist coverage, had offered the limit of its

liability, $25,000.00, to settle defendant's claim. Plaintiff also advised defendant, however, that the offer should not be accepted until she, the plaintiff, could determine whether there was any coverage on the leased vehicle through Ms. Mickens's lease. In this regard, plaintiff had attempted to secure a copy of the lease agreement, but Ford Motor Credit Company, the lessor, refused to voluntarily provide it. Plaintiff conveyed this fact to defendant and told defendant that she would file suit in order to get the agreement to see if there was additional insurance. Defendant discharged plaintiff one week later.

At trial defendant testified that she discharged plaintiff because she was not happy with the $25,000.00 figure, her medical bills alone having surpassed $12,000.00, and because she did not feel plaintiff had done everything possible to find out whether there was insurance relating to the lease. She now says, however, that she understands that all she can get out of the case if $25,000.00 since, as it turns out, the lease did not include insurance, and the purported tortfeasor, Ms. Mickens, has filed bankruptcy. Indeed, she now wishes to accept her carrier's offer, but the carrier refuses to pay until plaintiff's lien for fees is determined.

On the above facts, the court has no problem at all in finding that plaintiff was not terminated for cause. having been retained on December 10th, there was nothing negligent or dilatory in not presenting a settlement offer until April 10th. Four months is not an unreasonable time to investigate facts, talk to witnesses, assemble medical records, and negotiate with the insurer, even where liability is clear and medical expenses are fairly high. While defendant was understandably frustrated by the fact that there was relatively little insurance coverage and that plaintiff had not obtained the lease information from Ford, such frustration does not amount to legal cause to terminate a contract. Obviously, plaintiff had no control over insurance coverage, and the court finds that plaintiff's actions in attempting to obtain the needed information from Ford were entirely reasonable. Since lawsuits necessarily involve some degree of time and expense, plaintiff sought to obtain the information without filing suit. Only after those attempts failed did she make the decision

to file suit, and she informed defendant of her decision. She was terminated one week later.

The court also rejects defendant's argument that plaintiff's attempts to learn whether insurance was provided with the lease were unnecessary. Defendant's argument is based on Va. Code § 38.2-2205(A)(1) which, according to defendant, prohibits insurance coverage on vehicles leased for more than six months if other valid insurance exists. Defendant argues that since there was other valid insurance available to plaintiff here, it made no difference whether the lease contained additional insurance. Defendant misinterprets the statute.

Section 38.2-2505(A)(1) provides:

> Each policy or contract of bodily injury or property damage liability insurance which provides insurance to a named insured in connection with the business of selling, leasing, repairing, servicing, storing or parking motor vehicles, against liability arising from the ownership, maintenance, or use of any motor vehicle incident thereto shall contain a provision that the insurance coverage applicable to those motor vehicles shall not be applicable to a person other than the named insured and his employees in the course of their employment if there is any other valid and collectible insurance applicable to the same loss covering the other person under a policy with limits at least equal to the financial responsibility requirements specified in § 46.2-472. Such provision shall apply to motor vehicles which are either for the purpose of demonstrating to the other person as a prospective purchaser, or which are loaned or leased to the other person as a convenience during the repairing or servicing of a motor vehicle for the other person, or leased to the other person for a period of six months or more.

Contrary to defendant's argument, it is clear that the policy to which the above statute has reference-- that is, the policy referred to in the first two words,

"Each policy" -- is the policy of insurance procured by the person or entity which is engaged in the business of selling, leasing, repairing, servicing, storing, or parking motor vehicles. Properly read, the statute states that when such insurance exists, and when other valid insurance also exists, only the named insured -- that is, the person or entity engaged in one of the specified businesses -- and the named insured's employees are covered under the policy procured by the named insured. Thus, when a customer test drives a car at a car dealership and is involved in an accident, if the car is covered by the dealer's insurance and the customer is covered by his or her own personal insurance, § 38.2-2205(A)(1) states that the customer may not recover under the dealer's policy. The same is true with regard to taking one's car to a mechanic, taking one's car to a parking or storage facility, or, as is the case here, leasing a car from a leasing company.

Under § 38.2-2205(A)(1), since there was other insurance coverage available to defendant, the $25,000.00 previously mentioned, defendant was prohibited from recovering anything under Ford Credit Leasing Company's policy. There is nothing in § 38.2-2205(A)(1) or elsewhere, however, which prevents a lessee from purchasing his or her own coverage under the lease. Indeed, leasing companies routinely offer insurance coverage to its customers and requires customers to affirmatively reject such coverage if the customer chooses not to accept it. In light of the possibility of such coverage, plaintiff would have been negligent if she had advised defendant to accept the $25,000.00 offer before learning whether the lessee had obtained other insurance here. Defendant's argument in this regard is without merit.

Having decided that plaintiff was discharged without cause, the court must now determine whether she is entitled to compensation and, if so, how much. Plaintiff asserts that she is entitled to the fee provided for in her contract with defendant, one-third of the settlement amount. Defendant argues that the appropriate fee should be determined on the basis of *quantum meruit*. The court agrees with plaintiff.

Defendant is correct that when a client discharges an attorney without cause, the law in Virginia is generally

that *quantum meruit* is the proper measure of the attorney's recovery. In *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 234 S.E.2d 282 (1977), the Court cited with approval the following language from *Francasse v. Brent*, 6 Cal. 3d 784, 789-90, 494 P.2d 9, 12-13, 100 Cal. Rptr. 385, 388-89 (1972):

> The right to discharge [an attorney] is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered . . . . Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence. 217 Va. at 964.

The Court then stated:

> We share the conclusion that *quantum meruit* is the most functional and equitable measure of recovery. The law does not favor recoveries premised upon conjecture. In awarding the contractual fee, the trial court presupposed that Legum, had he not been discharged, would have achieved a recovery exactly equivalent to that achieved by Anninos. But this is entirely speculative. Legum might have effected a greater settlement or won a larger verdict; considering the vagaries of trial, he might have recovered nothing.
>
> Having in mind the special nature of a contract for legal services, we hold that when, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who

> effects a recovery, the discharged attorney is entitled to a fee based upon *quantum meruit* for services rendered prior to discharge . . . .

*Id.* (footnote omitted).

Because the facts of the case at bar are directly contrary to those in *Heinzman*, a different result is mandated. In *Heinzman*, the court concluded that a *quantum meruit* recovery was appropriate because anything else would be based upon conjecture and speculation. That is not the case here. At the time of her discharge, plaintiff had obtained a firm settlement offer of $25,000.00. It is that same offer which defendant now wishes to accept. Plaintiff did all of the work to procure that offer. Indeed, even though defendant did consult other counsel, even that counsel advised defendant to go back to plaintiff and accept the settlement through her. The only thing that has happened since the April 10, 1990, offer is that we now know that no insurance was obtained by Ms. Mickens in connection with the lease, plaintiff having obtained a copy of the lease by having a subpoena duces tecum issued in this case. Thus, there is nothing at all speculative or conjectural about the settlement which plaintiff would have procured had she not been discharged. She had already procured it. It is that same settlement which defendant is now willing to accept. To allow defendant to receive that settlement without honoring her contract with plaintiff would result in a deprivation of plaintiff's right to be compensated in accordance with the contract, and a windfall to defendant. Indeed, if defendant's argument were to prevail, any plaintiff in a personal injury case could, once a settlement offer is made, discharge his or her attorney, accept the settlement directly, and then require the lawyer to accept only a *quantum meruit* fee. Such a result is untenable.

For the reasons stated above, a declaratory judgment has been entered holding that plaintiff is entitled to receive one-third of $25,000.00 as her fee in representing defendant in the accident of December 5, 1989.