PRESENT:  All the Justices

JASON EUGENE SWANGO

                                       OPINION BY

v.  Record No. 241016                  JUSTICE WESLEY G. RUSSELL, JR.
                                       JULY 31, 2025

VIRGINIA STATE BAR
EX REL. SECOND DISTRICT,
SECTION I COMMITTEE


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Mary Jane Hall, Chief Judge Designate, Matthew A. Glassman
and Tyneka L.D. Flythe, Judges Designate

Jason Eugene Swango, a Virginia-licensed attorney, charged two clients what he characterized as a non-refundable $300 consultation fee.  The first individual ("Client A") attempted to cancel his consultation with Swango the day of the scheduled meeting because he no longer needed Swango's services.  The second individual ("Client B") simply missed his meeting.  Despite the fact that the consultations never occurred, Swango, who had deposited the fees into his operating account when they were received, refused to refund the fees.  The Virginia State Bar ("VSB") asserted that Swango's handling of the funds received violated Rule of Professional Conduct ("RPC") 1.5(a) regarding fees and RPC 1.15(a)(1) regarding the safekeeping of a client's property.[1]  Swango requested that the matter be heard before a three-judge circuit court, which determined that Swango had violated RPC 1.5(a) and RPC 1.15(a)(1).  Finding no error, we affirm the judgment of the circuit court.

---

[1] The VSB also alleged that Swango's conduct violated RPC 7.1 regarding communications with a client.  The circuit court found in Swango's favor on that charge, and therefore, it is not before us in this appeal.

BACKGROUND[2]

Swango operates The Firm for Men, Swango Law P.C., in Virginia Beach and primarily represents men in domestic relations matters. Swango and his firm had a standard intake policy for prospective clients. The firm charged prospective clients what Swango characterized as a non-refundable $300 consultation fee. It was the firm's practice to deposit such fees into the firm's operating account as an earned fee when the fee was received.

Clients were sent a confirmation letter via email after paying the fee. The firm also would send a questionnaire that asked the prospective client to detail the legal issue he wished to discuss with Swango. Swango would generally review that information before the scheduled consultation, although prospective clients would occasionally discuss issues outside of those cited in the questionnaire.

Client A called The Firm for Men on July 18, 2023 and scheduled a consultation with Swango for July 20, 2023 at 3 p.m. Before Client A paid the consultation fee, the firm advised him that the fee was non-refundable and that it would "get deducted from [his] initial retainer" if he hired the firm after consultation. Client A paid the fee and, consistent with his standard practice, Swango deposited the consultation fee in the firm's operating account.

After Client A paid the consultation fee, the firm sent Client A a confirmation email. This email stated that the consultation fee was non-refundable, and that the firm required 24 hours' notice to reschedule the consultation without incurring additional fees. The email also contained the following information under the heading "What to Expect":

> During your consultation, you'll meet with a knowledgeable
> attorney who represents men exclusively in family law. Together,

---

[2] "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

2

you'll dive into the specifics of your matter and discuss how those details may affect your strategy and case outcome(s). Bring any questions you might have for us as well – that's why we're here!

Based on our discovery process, we'll provide direction on navigating your particular matter and determine if retaining an attorney is in your best interests right now. After your consultation, you'll be provided with retainer fees specific to your matter.

Additionally, the firm forwarded Client A the questionnaire asking him for the details of his domestic relations matter.

Client A believed that he paid for an hour-long consultation to receive legal advice regarding his domestic relations matter. Client A canceled his appointment with Swango three hours beforehand because he and his wife came to "an understanding." Client A then asked for a refund, which the firm refused to grant. Client A unsuccessfully disputed the charge with his credit card company.

Client B called the Firm for Men on July 25, 2023 and scheduled a consultation for July 27, 2023. Client B paid the consultation fee and was never told that it was a retainer. Consistent with his standard practice, Swango deposited the consultation fee into his operating account.

The firm sent Client B the same confirmation email and questionnaire that it sent Client A. Client B believed that he was paying for an hour-long consultation to receive legal advice regarding his domestic relations matter. Client B missed his meeting and afterwards tried to reschedule his hour-long consultation, but the firm stated that he would have to pay another $300 consultation fee. Client B then sent the firm an email asking for an exception to the non-refundable fee policy, but never heard back.

Swango made two Facebook posts about the incidents that came to the attention of the VSB. The first, regarding Client A, stated:

Knowing me through football doesn't get you free legal services! How asinine for someone to think that? You know me BUT I don't know you. Then you don't honor your non-refundable consult fee for not showing wasting my time and you challenge the charge? Lol. That's why we have you sign documents so you can't pull this type of crap on business owners. We Winn again. People are wild. Then degrade me as a bad lawyer? Bro, you came to me because you "knew" me through my sons football? Nope. Knowing my family because they are awesome doesn't mean you KNOW us. what's your name again? One mutual friend on Facebook and that dude is not a friend of mine either. You can't make this up.

The second, regarding Client B, stated:

It's a paid non-refundable consult fee. You sign saying you understand. Prior to appointment there are constant follow up reminders and we even spoke to this guy the day of appointment because he failed to get us the paperwork. Said he would get it to us before the consult. Just one hour later he misses his appointment and FIVE days later emails staff saying he couldn't make his appointment and wanted a new one. When they asked for the consult fee (to set new appointment) he said he shouldn't have to pay. He said BECAUSE he is a lawyer I should provide a professional courtesy and return the first consult fee because even though he didn't show up, I could have worked on someone else's file and made the money.

WTH? That's why you suck! That's why your life is in shambles. You don't provide any courtesy to us as a lawyer who supposedly has clients yet you expect courtesy because we have the same degree?

Oh, and if I do refund he will refer me great cases. Lol.

Dude I've been getting great cases on my own for two decades! Go hire someone like you – I don't have time for this.

After investigating the matter, the VSB charged Swango with violating RPC 1.5 and RPC 1.15 with respect to each client. The VSB, citing to Legal Ethics Opinion ("LEO") 1606, asserted that the fees Swango collected were advanced legal fees, not retainers, and thus, were not earned when paid. As a result, according to the VSB, the fees should have been deposited

4

into Swango's trust account and the clients were entitled to refunds for the portions of the fees that Swango had not earned.

A three-judge circuit court held a hearing regarding the charges of misconduct. Swango admitted to charging a non-refundable consultation fee but denied that he violated his ethical obligations because he reasonably believed that his standard practice was consistent with RPC 1.5, RPC 1.15, and LEO 1606.

Swango moved to strike the VSB's evidence, claiming that RPC 1.5 contains a scienter requirement and that the VSB had not produced evidence that Swango intended to violate it. The crux of Swango's argument was that the distinction between advanced legal fees, which are not earned when paid under LEO 1606, and retainers, which are earned when paid, was unclear and that he made a reasonable judgment call after sufficiently analyzing the relevant rules and LEO 1606. The VSB opposed Swango's motion to strike, arguing that RPC 1.5 and RPC 1.15 do not contain scienter requirements and that Swango violated them even if they do. The circuit court denied Swango's motion to strike but did not state the grounds for doing so.

Swango then presented evidence in his defense, beginning with his own testimony. Swango emphasized that he analyzed RPC 1.5, RPC 1.15, and relevant LEOs, including LEO 1606. Swango reasoned that the consultation fees were not advanced legal fees because the clients did not retain Swango's services on a specific matter, noting that a client will sometimes discuss issues that he did not cite in his intake questionnaire.

Swango also introduced testimony from two other lawyers that he asserted charged prospective clients non-refundable consultation fees. Corryn Peters, a former member of the VSB's disciplinary committee, employed a nominally similar fee until 2023. Peters changed her practice regarding fees after taking a CLE during which Bar Counsel stated that non-refundable

consultation fees were not appropriate. She testified that her firm's stated policy was to keep those consultation fees in the event of a cancellation or a no show. However, the firm did not generally follow that policy and "almost always refunded some of" the fee, keeping a small portion "to cover the costs of the time to schedule the consult . . . or the cost of . . . the credit card transactions[.]" Peters also said that her firm never charged an additional fee to reschedule the consultation.

Lawren Burroughs testified that her firm's website communicated a similar policy. Her firm's website stated that the consultation fee was non-refundable unless the prospective client requested a refund within 24 hours of booking the consultation, and that the fee would be treated as a "retainer that w[ould] be applied toward the cost of [the prospective client's] consultation or legal services." Her firm did not charge an additional fee to reschedule a consultation. She stated that no prospective client had ever asked for a refund, and that she would have issued a refund if requested. Burroughs averred that although her firm's website referred to the fee as a retainer, her firm nevertheless treated it as an advanced legal fee and deposited such fees into the firm's trust account instead of its operating account. Burroughs ceased calling the fee non-refundable after the VSB told her it was inappropriate. The VSB did not take disciplinary action against Burroughs.

Swango then sought to introduce the testimony of Julie Palmer as an expert witness who would testify as to whether LEO 1606 prohibits non-refundable consultation fees. The VSB objected on the grounds that Palmer sought to testify as to the ultimate issue in the case in violation of Code § 8.01-401.3(B). The VSB argued that experts are precluded from testifying about conclusions of law and that Swango's counsel was perfectly capable of advancing the same arguments during closing arguments. Swango countered that evidence is broadly admitted

6

during disciplinary hearings and that "[Palmer was] able to provide an opinion as to whether or not Mr. Swango's policy would violate the rule." The circuit court precluded Palmer from testifying, and Swango subsequently proffered her testimony by avowal of counsel, stating that Palmer would testify that the LEOs are unclear as they pertain to non-refundable consultation fees and that Swango's policy did not violate the relevant RPCs. The circuit court reiterated its decision to exclude Palmer's testimony and stated that it "ha[d] enormous confidence in [counsel's] ability to advance the legal arguments that it sounds like Ms. Palmer was ready to address."

At the close of all of the evidence, Swango renewed his motion to strike, which the circuit court again overruled without stating its reasons for doing so.

The circuit court determined that Swango violated RPC 1.5(a) and 1.15(a)(1).[3] The circuit court found that "[b]y characterizing his consultation fees as nonrefundable, by refusing to reschedule Client B's appointment without an additional consultation fee, and by refusing to refund Client A's consultation fee, Respondent violated Rule 1.5(a) of the Virginia Rules of Professional Conduct[.]" (Emphasis removed.) The circuit court quoted LEO 1606 at length, emphasizing that advanced legal fees are "paid in advance for particular legal services not yet performed" and are not earned when paid. It distinguished these fees from retainers, which are "payment[s] by a client to an attorney to insure the attorney's availability for future legal services and/or as consideration for his unavailability to a potential adverse party in the future[.]" Additionally, the circuit court found that Swango violated RPC 1.15(a)(1) "[b]y depositing and maintaining Client A's consultation fee and Client B's consultation fee in his operating account

---

[3] The circuit court issued a "Summary Order" on August 27, 2024, the final day of the hearing, succinctly stating the disposition of the matter and the punishment imposed. The circuit court then issued a "Final Order" on September 30, 2024 providing its rationale.

7

when those fees were not earned[.]" (Emphasis removed.) The circuit court issued a public reprimand with terms requiring Swango to refund the clients' consultation fees.

Before the circuit court issued its Final Order, the VSB sought comment on a proposed amendment to RPC 1.5. Swango moved for the circuit court to reconsider its decision in light of these proposed changes to RPC 1.5, arguing that the fact that the VSB sought to amend RPC 1.5 demonstrated that the rule was ambiguous, and thus, his arguments that he should not be subject to discipline should have been credited. The VSB stated that the amendment simply "reiterat[ed] the conclusion established in [LEO] 1606[,]" and noted that LEO 1606 was approved by this Court in 2016.

The circuit court denied the motion, concluding that it did not "raise any new matter or describe any new evidence" and that the proposed amendments to RPC 1.5 did "not change existing jurisprudence on nonrefundable legal fees."

Swango now appeals.

ANALYSIS

A. Standard of review

In reviewing attorney disciplinary matters on appeal, "we conduct an independent examination of the entire record pertaining to the charge before us." *Pilli v. Virginia State Bar*, 269 Va. 391, 396 (2005). In doing so, we do not accord the circuit court's factual determinations the same deference we grant to a jury's verdict, but rather, "view [its] findings as prima facie correct" and "sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Id*. Given that it prevailed below, we view the evidence in the light most favorable to the VSB, granting it all reasonable inferences that can be drawn from such a view of the evidence. *Green v. Virginia State Bar*, 278 Va. 162,

8

171 (2009). To the extent that resolution of the appeal involves the interpretation of the Rules of Professional Conduct or the supporting LEOs, it poses questions of law that we review *de novo*. *See Roberts v. Virginia State Bar*, 296 Va. 105, 115 (2018); *Zaug v. Virginia State Bar*, 285 Va. 457, 462 (2013). Regarding Swango's challenge to the exclusion of certain evidence, we note that the circuit court's "decision to . . . exclude evidence [wa]s a discretionary matter and will not be overturned on appeal unless the record shows an abuse of that discretion." *Haley v. Virginia State Bar*, 301 Va. 230, 243 (2002) (quoting *Green v. Virginia State Bar*, 272 Va. 612, 616 (2006)).

B. Attorney-client contracts, RPC 1.5, RPC 1.15, and LEO 1606

In almost all civil cases, the attorney-client relationship is a voluntary one where a potential client seeks representation by a lawyer, resulting in an agreement, whether oral or written, that gives rise to mutual obligations of the parties. Although the relationship and its attendant responsibilities have their genesis in that agreement, "[c]ontracts for legal services are not the same as other contracts." *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 962 (1977). A contract for legal services "is, essentially, in a classification peculiar to itself" because it "is permeated with the paramount relationship of attorney and client which necessarily affects the rights and duties of each." *Id*. at 963 (quoting *Krippner* v. *Matz,* 287 N.W. 19, 24 (Minn. 1939)).

Given the special nature of the attorney-client relationship, any contract between a lawyer and client must be interpreted through the lens of and be enforced consistent with the ethical rules governing lawyers. A Virginia lawyer may not, by contract, evade the professional obligations imposed upon him by the Rules of Professional Conduct.

Among the ethical limitations that restrain an attorney's ability to set the terms of his contract with a client are RPC 1.5's prohibition on a lawyer charging anything but a "reasonable" fee for services rendered and RPC 1.15(a)(1)'s requirements regarding the safekeeping of client property, specifically that a lawyer must deposit an advanced legal fee paid by a client into his trust account and may only transfer the funds to his operating account once the legal services covered by the advanced legal fee have been rendered. Although they disagree about the scope and effect of these provisions, the parties agree that a proper understanding of them is informed by LEO 1606.

LEO 1606, issued by the VSB in 1994 and formally adopted by this Court in 2016,[4] addresses all manner of fee issues encountered by attorneys and their clients. Although the bulk of the opinion is spent explaining the differences between various fee arrangements, the major premise of the opinion is that a lawyer's fee "must be reasonable" and that any fee charged for work that never is performed is *per se* unreasonable. Va. Legal Ethics Op. 1606. Only when the work covered by the fee is actually performed does it become the property of the attorney. *Id*.

In explaining when a fee is earned, the opinion defines various types of permissible fee arrangements and when, under each, a fee is actually earned by the lawyer. Pertinent here, the opinion defines and explains the differences between retainers and advanced legal fees.

"[A] retainer . . . is a payment by a client to an attorney to insure the attorney's availability for *future legal services* and/or as consideration for his unavailability to a potential

---

[4] On January 25, 1999, this Court entered an order replacing the then existing Code of Professional Responsibility with the new Rules of Professional Conduct, with the Rules of Professional Conduct becoming effective on January 1, 2000. Thus, the VSB issued LEO 1606 while the Code of Professional Responsibility was in effect, but we formally adopted it after the Rules of Professional Conduct became effective. Accordingly, for the issues it addresses, we have concluded that LEO 1606 is a correct statement of a lawyer's responsibilities under either the former Code of Professional Responsibility or the current Rules of Professional Conduct.

10

adverse party in the *future*." *Id*. (emphasis added). It "is not a pre-payment for legal services to be rendered in the future," but rather, "seeks to guarantee the client's right to secure the attorney's employment for representation of his interests *in a matter which may arise in the future*." *Id*. (emphasis added).

In determining when a lawyer has earned the money paid by the client, it is critical to recognize that a true retainer secures a lawyer's availability for a future legal matter that may or may not arise at some unspecified point in the future and does not entitle a client to any specific legal service at the time of payment. "[B]ecause retainers are paid to secure the availability of an attorney in the future, and not as payment for future legal services, retainers are earned when paid and become the property of the attorney upon receipt." *Id*. As a result, the lawyer does not hold the funds in trust for the client, but rather, may place the funds in his operating account because he has already earned them.

LEO 1606 distinguishes retainers from "advanced legal fees," which are "[f]ees paid in advance for particular legal services not yet performed[.]" *Id*. Advanced legal fees represent prepayment for services to be rendered in a known matter or for identifiable services that are contemplated by the lawyer and client at the time of the payment. *Id*.

Because such payments entitle the client to legal services—whether that be research, consultation, advice, litigation or any other identifiable legal service—for a known and discrete set of legal circumstances, a lawyer does not earn any portion of an advanced legal fee until such services are actually rendered. *Id*. As a result, advanced legal fees "must be deposited in an identifiable account (trust account) and remain the property of the client until they are earned by the attorney." *Id*. For example, if a fee is paid to secure an in-person meeting between the lawyer and client to discuss a particular set of legal circumstances, any portion of the fee

11

associated with the actual meeting is not earned by the attorney until the meeting has taken place.[5]

If the attorney-client relationship ends before such a meeting takes place, the attorney has not earned the associated portion of the advanced legal fee, and thus, it remains the property of the client. "Upon termination of the representation it is the duty of the attorney to refund any portion of an advanced legal fee which has not been earned." *Id.*

In addition to setting out the differences between true retainers and advanced legal fees, LEO 1606 makes clear that it is those *substantive* differences and not the label an attorney places on a payment from a client that determines how the lawyer must treat the payment. The restrictions on how a lawyer must treat funds received from a client "cannot be avoided by the . . . contract" between the lawyer and client. *Id.* Rather, "[r]egardless of the agreed terms, the designation of the fee in the . . . contract cannot alter the true nature of the fee and will not be dispositive in determining whether" the lawyer has violated his ethical obligations. *Id.* Similarly, the label placed on the payment by the lawyer does not determine "whether the fee has been earned by the lawyer or into which type of account the fee must be placed." *Id.* It is the actual nature of the payment that determines a lawyer's obligations because "[a] lawyer cannot by contract alter the nature or the ownership of fees received, nor can he legitimize a fee that is otherwise prohibited[.]" *Id.*

Finally, as pertinent here, LEO 1606 addresses whether a lawyer may treat any portion of an advanced legal fee as "non-refundable." LEO 1606 provides that "any fee arrangement

---

[5] This is not to say that a lawyer may not be entitled to keep some portion of an advanced consultation fee for services rendered prior to the meeting being cancelled. If the lawyer and client contemplate that, as a result of the payment of the fee, the lawyer will do research or otherwise prepare for the meeting, the portion of the fee tied to such research and preparation is earned when the research or other preparation is completed.

involving advanced legal fees and providing for a non-refundable or minimum fee . . . is . . . improper." *Id.* This is because, as noted above, an advanced legal fee "continues to be the property of the client. . . . [and] must be deposited in a trust account and may only be paid over to the lawyer when and if it is earned." *Id.* "An advanced legal fee cannot, by employment contract or otherwise, be termed non-refundable without violating" a lawyer's ethical obligations. *Id.* The opinion emphasizes that "using the term 'retainer' to describe what is, in reality, an advanced legal fee does not change the true nature of the fee, nor does it allow the fee to be considered non-refundable." *Id.*

C. Swango's practice of keeping unearned legal fees violated the Rules of Professional Conduct

Recognizing that LEO 1606 sets forth the rule of decision, the parties disagree as to its application to the largely undisputed facts. Swango contends that the respective consultation fees represented a retainer (or that he reasonably believed they did), and therefore, he was entitled to deposit them directly into his operating account. The VSB contends that the consultation fees were advanced legal fees that Swango impermissibly placed into his operating account and that he was required to issue refunds when he did not provide the services covered by the fees. The circuit court agreed with the VSB and so do we.

The undisputed facts make clear that each $300 fee was an advanced payment for legal services and not a retainer. Although labels are not dispositive, the communication from Swango's firm confirming that a "consultation" had been scheduled characterized the payment as a "consultation fee[,]" which at a minimum suggests that each fee entitled the client to an actual consultation involving discussion between the attorney and the client. The firm's communication continued by reminding the clients to remember to be "on time so you may receive your full allotted consultation time[,]" underscoring that the fee was payment for an

13

actual consultation. Finally, Swango himself consistently referred to the charge as a "consult fee" in what we charitably characterize as his less than professional posts about the clients on Facebook.

Further communications from the firm underscored that the fees were advanced payments for legal services. The clients were told that they would meet with a knowledgeable attorney who would be familiar with the facts of their situation to allow a "dive into the specifics of the matter" and a "discuss[ion of] how those details may affect [the clients'] strategy and case outcome(s)." The clients were encouraged to bring any questions that either had and assured that, as a result of the lawyer's review, each client would be provided with advice and "direction on navigating [his] particular matter[.]"

There can be no serious argument that a lawyer researching a client's situation, meeting with the client to discuss that situation and to answer any questions that the client poses, and then providing advice on the best way for the client to approach the matter going forward is not the provision of legal services. Such interactions and advice are quintessentially the provision of legal services. Here, Swango required each client to pay in advance for those services. It borders on tautology to conclude that, by requiring the advance payments for the specified legal services that were to be rendered, Swango required and received an "advanced legal fee" as that phrase is defined in LEO 1606.

We find Swango's argument that the payments represented retainers to be unpersuasive. As noted above, a retainer is not a payment for discrete legal services about a specific known matter in the present; rather, it is a payment "to guarantee the client's right to secure the attorney's employment for representation of his *interests in a matter which may arise in the future*." Va. Legal Ethics Op. 1606 (emphasis added). As noted above, the parties, based on the

14

communications from Swango's firm, contemplated that the fees were paid to secure discrete and known legal services and advice for a known set of legal circumstances—the strife attendant in each of the clients' marriages. Based on the firm's communications to the clients, it was contemplated that, at the end of the consultation, Swango would provide advice and "direction on navigating [the client's] *particular* matter[.]" (Emphasis added.) Furthermore, nothing in the communications suggested that the fee would not involve immediate legal services for the known matter, but rather, was a payment to guarantee that Swango would represent the client if a matter were to "arise in the future." *See* Va. Legal Ethics Op. 1606.

Finally, we note that Swango's actions undermine his claim that he understood the fees were paid to guarantee his availability and ability to professionally represent the clients in the future. If one accepts that was his understanding, the payment created an ongoing representation relationship extending to some unspecified time in the future.[6] Such an ongoing relationship, in which Swango would have been required to serve each clients' interests at some point in the future, simply cannot be reconciled with his unprofessional Facebook posts. The posts contained caustic, unprofessional, and personal criticisms of each client. It should go without saying that a lawyer with a continuing professional relationship with a client should not, and cannot consistent with professional obligations, publicly berate the clients he represents. The unprofessional postings would have undermined Swango's ability to represent each client in the unspecified,

---

[6] We note that, assuming the fee was a retainer, nothing in Swango's communications placed a limit on how long into the future he would be obligated to reserve his services for each of the clients. At oral argument in this Court, Swango conceded the open-ended nature of the alleged retainer, but rejected that it would require him to reserve his services indefinitely. Rather, he contended that his obligation under such a retainer agreement would terminate at some undefined "reasonable" period of time. In any event, there can be no dispute that, whatever the period of time, it would have included the time when Swango made his Facebook posts.

15

potential future matters for which he now claims that he had been "retained." Simply put, the unprofessional postings not only call into question Swango's judgment; they undermine the argument he seeks to raise on appeal.

The fact that the payments at issue unquestionably constitute advanced legal fees and not retainers compels the conclusion that Swango's conduct violated the Rules of Professional Conduct. Because advanced legal fees are not earned until the services are provided, Swango violated RPC 1.15(a)(1) regarding the safeguarding of a client's property when he failed to place the money in his trust account, but rather, converted the client's property to his own use by placing it in his operating account. Further, because he did not provide all of the legal services covered by the fees and a fee charged for work that never is performed is *per se* unreasonable, his failure to return at least a portion of the fees violated RPC 1.5's requirement that lawyers only charge reasonable fees. Accordingly, we affirm the judgment of the circuit court regarding Swango's violation of the referenced Rules of Professional Conduct.

> D. Swango's conduct was intentional and his erroneous interpretation of the Rules of Professional Conduct does not insulate him from discipline

Swango next argues that, even accepting that his conduct violated RPC 1.5(a) and RPC 1.15(a)(1), he should not be subject to discipline because he did not intend to violate those rules. Specifically, he asserts that he lacked the intent to violate the rules because he read the relevant rules and LEO 1606 and concluded that his conduct was permissible. From this, he argues that he cannot be subject to discipline because his violations resulted from his "good-faith belief that his conduct . . . was done in compliance with" his obligations and that he never possessed an "improper state of mind."

In advancing this argument, Swango commits a category error; he conflates ignorance of his responsibilities with a lack of intent to commit prohibited acts. As the United States Supreme

Court has observed, the law has "long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 581 (2010) (quoting *Barlow v. United States*, 32 U.S. 404, 411 (1833) (opinion for the Court by Story, J.)). As a result, the "law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that [the] conduct violated the law." *Id.* at 582-83.

Assuming that the relevant RPCs contain an intent requirement, any such requirement would be that the lawyer's *conduct* be intentional.[7] Here, there can be no dispute that all of Swango's conduct regarding the fees in this case was intentional. The undisputed facts establish that Swango demanded and received the consultation fee in advance of the consultation, intentionally deposited that money directly into his operating account prior to the consultation, and never provided the legal services that his firm represented would be provided at the consultation. Furthermore, his public Facebook posts attacking both clients demonstrate that his failure to return any portion of the fees was not accidental but was done knowingly and intentionally. Accordingly, to the extent that the relevant rules require intent, the evidence establishes that Swango's knowing and intentional conduct violated the relevant prohibitions.[8]

---

[7] Because the facts conclusively establish that Swango's relevant conduct in this case was intentional, we need not address the extent to which the relevant rules contain a specific scienter requirement. For example, we leave for another day whether a lawyer who intended to place an advanced legal fee into his trust account violates RPC 1.5(a) and RPC 1.15(a)(1) when the money is placed in his operating account because the lawyer accidentally used the incorrect deposit slip.

[8] Swango's claim that his failure to understand his responsibilities came after he reviewed the relevant RPCs and LEO 1606 does not excuse his failure to comply. As noted above, the relevant RPCs and LEO clearly prohibited the conduct in which Swango engaged. His alleged misinterpretation of his responsibilities simply does not excuse his failure to comply.

E. The circuit court did not abuse its discretion in excluding the testimony of Swango's proffered expert

Swango next contends that the circuit court abused its discretion in declining to hear from his proffered expert witness. Specifically, Swango sought to call a lawyer to testify regarding the meaning of the relevant RPCs and LEOs, to testify that she did not believe that Swango's conduct violated the relevant RPCs, and that, at best, the relevant RPCs and LEOs were unclear.

The circuit court did not abuse its discretion in excluding Swango's proffered expert. As a general matter, "[i]n a civil proceeding, if scientific, technical, or other specialized knowledge will assist the trier of fact *to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Va. R. Evid. 2:702(a)(1) (emphasis added); *see also* Code § 8.01-401.3(A). "The purpose of expert testimony is to assist the trier of fact in understanding the evidence." *Watson v. Commonwealth*, 298 Va. 197, 205 (2019); *see also CNH Am. LLC v. Smith*, 281 Va. 60, 67 (2011); *Norfolk Southern Railway Co. v. Rogers*, 270 Va. 468, 479 (2005). This potential assistance, however, does not extend to questions of law. As a result, an expert witness may not "express any opinion which constitutes a conclusion of law." Code § 8.01-401.3(B).

Here, the proffered testimony either constituted inadmissible legal conclusions or irrelevant opinion. Whether particular conduct violates a Rule of Professional Conduct calls for a legal conclusion. *See Roberts*, 296 Va. at 115; *Zaug*, 285 Va. at 462. Accordingly, the circuit court did not err in excluding the proffered opinions that the Rules of Professional Conduct did not prohibit Swango's conduct or that his conduct did not violate the relevant RPCs. Furthermore, the proffered opinion that the expert found the requirements of the relevant RPCs

18

unclear is irrelevant; an attorney is not excused from fulfilling his professional obligations because another attorney deems a rule or regulation confusing.[9]

We note that a lawyer's ethical obligations are different in kind than a claim for malpractice. As the preamble to the Rules of Professional Conduct provides, violating the Rules of Professional Conduct, in and of itself, does "not give rise to a cause of action nor should it create any presumption that a legal duty has been breached" because the Rules of Professional Conduct "are not designed to be a basis for civil liability." Va. Sup. Ct. R. pt. 6, sec. II, Preamble. In the malpractice context, an attorney's obligation to his client is set by what a reasonably prudent attorney would have done under the same or similar circumstances, s*ee Smith v. McLaughlin*, 289 Va. 241, 253 (2015), and thus, what other attorneys thought or would have done is relevant to the determination. In contrast, a scenario in which multiple lawyers are acting in violation of an RPC does not mean that the conduct does not violate the lawyer's ethical obligations; rather, it simply means that multiple lawyers are violating the Rules of Professional Conduct and are subject to discipline.[10]

---

[9] In any event, we do not find the relevant RPCs vague or confusing. Any fair reading of the relevant RPCs and LEO 1606 inexorably leads to the conclusion that Swango's conduct violated RPC 1.5 and RPC 1.15.

[10] For this reason, the testimony that Swango offered that other lawyers employed similar non-refundable consultation fee schemes is not a defense. Furthermore, we note that, although nominally similar, the examples offered by Swango differed in significant respects from Swango's conduct. For example, Burroughs testified that, unlike Swango, her firm initially deposited the consultation fees into its trust account, effectively treating the fee as unearned until the consultation had taken place. She also testified that, although no one had ever requested a refund, a refund would have been provided if requested and no consultation had taken place. Similarly, although Peters' firm's website stated that consultation fees were non-refundable, she could not think of a single time where a client who canceled a consultation was not provided at least a partial refund.

19

F. The circuit court did not err in denying Swango's motion to reconsider

Swango asserts that the circuit court erred in denying his motion to reconsider. He argued below that the fact that, a few days after the circuit court had entered its summary order, the VSB proposed changes to RPC 1.5 "constitute[d] a concession that the applicable provisions would not reasonably be clear to a practitioner." From this premise, Swango argued the circuit court should reconsider its findings that he had violated the respective rules.

The circuit court denied Swango's motion, concluding that it did not "raise any new matter or describe any new evidence" and that the proposed amendments to RPC 1.5 did "not change existing jurisprudence on nonrefundable legal fees." Swango asserts that the circuit court's denial of his motion constitutes reversible error. We disagree.

We review the circuit court's denial of Swango's motion to reconsider under the deferential abuse of discretion standard. *See*, *e.g.*, *Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 77 (2020); *Winston v. Commonwealth*, 268 Va. 564, 620 (2004). For the reasons that follow, the circuit court did not abuse its discretion.

First, any subsequent changes that were proposed by the VSB and that we ultimately adopted in May 2025 did not apply to Swango's conduct, all of which predated the proposed changes and the adoption of those changes.[11] Furthermore, as the circuit court found, the amendment did "not change" anything about an attorney's obligations regarding fees.

The only proposed change to the actual text of RPC 1.5 that the VSB proposed was the addition of subsection (g). That subsection provides that "[n]onrefundable advanced legal fees are prohibited." Of course, this was already the case as LEO 1606, issued by the VSB more than three decades ago and formally adopted by this Court in 2016, expressly provides that "any fee

---

[11] The proposed changes became effective on July 15, 2025.

20

arrangement involving advanced legal fees and providing for a non-refundable or minimum fee . . . is . . . improper." Va. Legal Ethics Op. 1606. Thus, with or without the addition of subsection (g), a lawyer was and is prohibited from charging nonrefundable advanced legal fees.

In addition to adding subsection (g), the VSB's proposal that we adopted included the addition of two comments to RPC 1.5, comments 10 and 11. Comment 11 provides a definition of "retainer" that distinguishes it from an advanced legal fee and tracks the definitions of those terms that is found in LEO 1606. The new comment 10 provides that

> [a] nonrefundable advanced legal fee compromises the client's unqualified right to terminate the lawyer-client relationship because the right to terminate the representation would be negatively affected if the client would still risk paying for services not provided. Further, retaining a nonrefundable fee after being discharged by the client before the fee is earned violates the lawyer's responsibility to refund any unearned fee upon termination of the representation. An unearned fee is per se unreasonable and therefore charging an unearned nonrefundable fee violates Rule 1.5(a). *See LEO 1606.*

(Emphasis added.) In short, the comment not only distills the substance of LEO 1606 on advanced legal fees, it also expressly references LEO 1606, making clear that LEO 1606 remains a correct statement of a lawyer's obligations. The amendment does nothing more than expressly incorporate the substance of LEO 1606 both in the text of RPC 1.5 and in the accompanying comments. This was the VSB's purpose in seeking the amendment. In its petition seeking the amendment, the VSB stated that it "codifies the prohibition of nonrefundable advanced fees, reiterating the conclusions in Legal Ethics Opinion (LEO) 1606 (1994; approved by the Court on November 2, 2016)." Accordingly, the changes effected no substantive change and make clear that LEO 1606 continues to inform the interpretation of RPC 1.5.

We do not credit Swango's argument that the amendment was needed to remove confusion and clarify a lawyer's obligations. To the extent it does anything, the amendment

21

removes any need for a lawyer to engage in the minimal research that would have been necessary to find LEO 1606.[12]  It does so by expressly adopting some if its language and expressly citing to it in the comments.  It is hard to imagine any lawyer making a good faith attempt to interpret his obligations under the preexisting RPC 1.5 and LEO 1606 who would come to any different conclusion regarding those obligations under the amended version of RPC 1.5.  As noted above in footnotes 7 & 8, the pre-amendment rules clearly prohibited Swango's conduct, and any good faith interpretation of the relevant RPCs and LEO 1606 made that clear.

Because nothing about the amendment changed Swango's obligations, the circuit court did not abuse its discretion when it denied his motion to reconsider.

CONCLUSION

For the foregoing reasons, Swango's conduct clearly violated RPC 1.5 and RPC 1.15. Accordingly, we affirm the judgment of the circuit court.

*Affirmed.*

---

[12] Of course, Swango claims to have done the research and found LEO 1606 before engaging in the prohibited conduct.  Thus, the amendment to RPC 1.5 pointing him to LEO 1606 likely would not have changed his behavior.